# IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

ALLEN W. KERR, INSURANCE    *
COMMISSIONER    *
FOR THE STATE OF ARKANSAS,    *
IN HIS CAPACITY    *
AS RECEIVER FOR    *    CASE NO.  4:18CV00423 SWW
COSMOPOLITAN LIFE    *
INSURANCE    *
COMPANY    *
          PLAINTIFF    *
   *
V.    *
   *
GOTHAM INSURANCE    *
COMPANY    *
          DEFENDANT    *

## <u>OPINION AND ORDER</u>

The Arkansas Insurance Commissioner (the "Receiver") serves as the

official receiver for Cosmopolitan Life Insurance Company ("Cosmo"), and in that

capacity, he commenced this action in state court pursuant to Ark. Code Ann. § 23-

89-101[1] against Gotham Insurance Company ("Gotham").  Gotham removed the

---

[1]The statute provides:

> (a) Any policy of insurance issued or delivered in this state indemnifying any person against any actual money loss sustained by the person for damages inflicted upon the property or person of another shall contain a provision that the injured person, or his or her personal representative, shall be subrogated to the right of the insured named in the policy.

> (b) The policy shall also contain a provision that the injured person, or his or her personal representative, whether the provision is actually inserted in the policy or not, may maintain a direct cause of action against the insurer issuing the policy for the amount of the judgment rendered against the insured, not exceeding the amount of the policy, provided the judgment remains unsatisfied at the expiration of thirty (30) days from the serving of notice of entry of judgment upon the attorney for the insured or upon the insured or upon the insurer.

case pursuant to the Court's diversity jurisdiction. Before the Court are (1) the Receiver's motion for summary judgment [ECF Nos. 15, 16, 17], Gotham's response in opposition [ECF Nos. 23, 24], and the Receiver's reply [ECF No. 30] and (2) Gotham's cross-motion for summary judgment [ECF No. 25, 26, 27], the Receiver's response in opposition [ECF Nos. 31, 32], and Gotham's reply [ECF No. 37]. After careful consideration, Gotham's motion is granted.

## I. Background

From 2005 through March 2009, John Mathis Lile, III ("Lile") served as the president of Cosmo, and he owned a minority share of the company. Lile also had majority or sole ownership of a separate company, Advanced Brokerage of America, Inc. ("AIBA"), and he served as the company's CEO.[2] AIBA and Cosmo provided services to small businesses with self-funded health plans, and Gotham issued an errors and omissions policy ("the Policy") to AIBA.

### A. The Underlying Lawsuit

In 2009, Cosmo was insolvent, and the Arkansas Insurance Department took the company into receivership. The Receiver filed suit against Lile and AIBA, charging that Lile had misappropriated Cosmo's funds. The Receiver sought relief

---

Ark. Code Ann. § 23-89-101.
[2]AIBA conducted business under other names, including Advanced Insurance Administration, and is referred to as "AIA" in various portions of the record. *See, e.g.,* ECF No. 27-3, at 1.

2

under two causes of action: breach of fiduciary duties and conversion.[3]  The

Receiver voluntarily dismissed the original complaint but refiled it in 2012.  The

Receiver's renewed complaint framed the action as one for "breach of fiduciary

duties and conversion,"[4] but the pleading included a third cause of action titled:

"Alternatively, Negligence."[5]

The facts alleged in the renewed complaint are these.[6]  AIBA sold and

administered a health benefit product called Employers Choice Health Plan

("ECHP") by which small business owners would provide health benefits to

employees by self-funding employee health care claims up to a "retention limit."

Cosmo offered excess loss coverage ("ELC"), also known as "stop-loss" insurance,

that reimbursed employers for payments over the retention limit.  Cosmo entered a

separate "treaty" with participating employers for ELC or stop-loss coverage.[7]

To fund the ECHP, participating employers paid monthly fees to AIBA.

Pursuant to an unwritten business plan (the "Business Plan"),[8] AIBA took 16% of

the gross monthly fees to pay claims up to the employer retention limit.  The

Business Plan directed that AIBA would then segregate the remaining gross

monthly fees as follows: 20% for AIBA's administrative costs and 64% for

---

[3] ECF No. 27-2.
[4] ECF No. 27-3, at 3, ¶ 4.
[5] ECF No. 27-3, at 10-11.
[6] *See* ECF No. 27-3.
[7] ECF No. 27-3, at 13 (Ex. A, Treaty Example).
[8] The Renewed Complaint cites an expert report that details the Business Plan.  ECF No. 27-3, at 25-50.

Cosmo's ELC or stop-loss coverage. The Business Plan called for AIBA to retain the portion of gross monthly fees designated for retention limit coverage and administrative costs and distribute the remaining 64% to Cosmo. Once an employer exhausted its retention limit, the Business Plan anticipated that Cosmo, having received its share of monthly fees, would pay valid claims that exceeded the retention limit.

Prior to 2006, Cosmo and AIBA operated independently. Each company maintained separate financial records and followed the Business Plan.[9] In 2003 or 2004, Lile acquired a minority share in Cosmo and began running the company.[10] In 2004, Cosmo's ELC claims exceeded capital, and Lile asked AIBA's chief financial officer to delete claims from records to make it appear that Cosmo was solvent.[11] When the financial officer refused, Lile told her that he "did not pay her to think," and she resigned.[12]

Subsequently, Lile hired one person to handle the finances of both AIBA and Cosmo, which enabled Lile to misuse funds earmarked for Cosmo under Business Plan. By April 2007, Cosmo was 75 days behind on paying claims, and some health care providers refused to honor ECHP insurance.[13] Lile instructed his

---

[9] ECF No. 27-3, at 5.
[10] ECF No. 27-3, at 5, ¶ 11.
[11] ECF No. 27-3, at 5 (citing Walraven Dep.)
[12] *Id.*
[13] ECF No. 27-3, ¶12.

4

financial officer to allocate 50% of each week's employer fee deposits toward retention limit payments,[14] money was not allocated to Cosmo according to the Business Plan, and Cosmos's financial condition worsened.

Lile misapplied or misappropriated Cosmo's funds by (1) failing to distribute fee payments to Cosmo, in the total amount of $1,405,749.50;[15] (2) using Cosmo's funds to pay for AIBA employee health care expenses, in the total amount of $193,167.78;[16] (3) using Cosmo's funds to pay for his own health care expenses, in the total amount of $2,845;[17] (4) using Cosmo's funds to pay for his personal credit card expenditures, in the total amount of $289,000,[18] and (5) using Cosmo's funds to make overpayments to one of Lile's companies, in the total amount of $480,596.36. The grand total of these separate categories of misappropriated funds equaled $2,371,358.50.[19]

With the renewed complaint, the Receiver sought a $2,371,358.50 judgment under three theories of relief: breach of fiduciary duties, conversion, and negligence. In support of each claim, the Receiver realleged and incorporated the factual allegations set forth above and additional allegations:

- In support of the claim for breach of fiduciary duties, the Receiver alleged that as President of Cosmo, Lile breached his fiduciary duties to Cosmo and its

---

[14] *Id.*
[15] *Id.*, ¶14(citing Forensic Rpt.).
[16] *Id.*, at 7, ¶ 16.
[17] *Id.*
[18] *Id.*, at 7-8, ¶ 17.
[19] *Id.*, ¶ 27; *see also* ¶ 20, ¶ 24, , ¶ 37.

shareholders "to [ensure] Cosmo's compliance with the terms of the business model, the ELC treaty, or both, and not to use Cosmo's funds to pay for obligations for which Cosmo was not liable."[20]  The Receiver alleged that as a proximate cause of Lile's breach, Cosmo suffered damages in the amount of at least $2,371,358.50.

- Under the conversion claim, the Receiver alleged that "Lile made improper and unauthorized disbursements from Cosmo to or on behalf of himself, [AIBA], and ECHA in the amount of at least $2,371,358.50."[21]

- Under the heading "alternatively, negligence," the renewed complaint stated: "In the event the jury determines that the Receiver failed to carry the burden to show that Defendants acted intentionally, the Receiver asks for an alternative finding . . . that Defendants acted negligently."[22]  The Receiver repeated that "Lile had a duty to Cosmo and its policy holders to [ensure] Cosmo's compliance with the terms of the business model, the ELC treaty, or both, and not to use Cosmo's funds to pay for obligations for which Cosmo was not liable."[23]  The Receiver charged that Lile "acted unreasonably and failed to exercise proper care in the performance of his legal duties by failing to ensure Cosmo's compliance with the terms of the business model, the ELC treaty, or both, and by using Cosmo's funds to pay for obligations for which Cosmo was not liable."  The Receiver alleged that Lile's negligence proximately caused damages of at least $2,371,358.50, and he sought to hold AIBA vicariously liable for the damages.[24]

## B.  The Coverage Lawsuit

In 2013, with the Underlying Lawsuit still pending, Lile and AIBA filed suit ("the Coverage Lawsuit") against Gotham, the defendant in this case, charging that the insurer breached a duty under errors-and-omissions policies to defend AIBA in the Underlying Lawsuit and three additional suits brought by small businesses that

---

[20] ECF No. 27-3,
[21] ECF No. 27-3, at 8, ¶ 29.
[22] ECF No. 27-3, at 10, ¶ 34.
[23] ECF No. 27-3, at 10, ¶ 35.
[24] ECF No. 27-3, at 11, ¶ 38.

had self-funded insurance plans administered by AIBA.[25]  Gotham

counterclaimed, and the parties entered a settlement agreement that released

Gotham from claims for coverage under certain errors-and-omissions policies,

including the Policy at issue in this case.[26]

### C.  Lile's Criminal Conviction

In 2014, Lile pleaded guilty in this Court to theft or embezzlement in

connection with health care, in violation of 18 U.S.C. § 669.  The elements of the

federal crime included that Lile converted to his own personal use, without lawful

authority, assets belonging to Cosmo, and that he acted knowingly and willfully.

In pleading guilty, Lile acknowledged that from 2005 through March 2009, he

used a credit card issued to him as president of Cosmo for thousands of dollars of

nonbusiness-related expenses, all of which were paid by Cosmo or AIBA.  On July

23, 2015, Lile was sentenced to serve twelve months and one day in prison, three

years of supervised release, and he was ordered to pay $118,500 in restitution to

Cosmo.[27]

### D.  Settlement of Underlying Lawsuit and Consent Judgment

In 2017, the Receiver, Lile, and AIBA entered a settlement agreement in the

Underlying Lawsuit, which called for a $2 million Consent Judgment  in favor of

---

[25]   The case was removed to this Court and filed as *Advanced Insurance Brokerage of America, Inc. v. Mutual Marine Office, Inc.*, 4:13CV00532 BSM (E.D. Ark).
[26] ECF No. 34 (Filed Under Seal).
[27] *United States v. John Mathis Lile, III*, No. 4:13CR00100-001 SWW (Judgment entered July 23, 2015, E.D. Ark).

the Receiver.  The Receiver agreed that he would never collect or attempt to collect the Consent Judgment  from Lile or AIBA.[28]  The Underlying Lawsuit concluded with the entry of a Consent Judgment (the "Consent Judgment ") that memorialized the terms of the settlement agreement and provided that the judgment was "based solely on the claim of negligence set forth in the Receiver's Renewed Complaint."[29]  The Consent Judgment provided:

> Further, pursuant to the terms of the Agreement, the Receiver will pursue [AIBA's] errors and omissions insurance carrier for collection of this judgment but forbear any and all execution of this judgment against Lile and [AIBA].  Moreover, the Receiver's claims of breach of fiduciary duties and conversion, and for punitive damages, shall be, and are hereby, dismissed with prejudice.[30]

### E.  The Present Lawsuit

In 2018, the Receiver filed this action against Gotham pursuant to Ark. Code Ann. § 23-89-101, seeking to collect the $2 million Consent Judgment  from Gotham, pursuant to the Policy.  Section 23-89-101 allows a party injured by an insured to maintain a direct action against the insurer and collect, by way of subrogation, an unsatisfied judgment against the insured.  "The statute . . . is contractual in nature . . . and places [the injured party] in the shoes of the insured suing the insurer alleging coverage under the insurance agreement."  *Equity Fire & Cas. Ins. Co. v. Coleman*, 326 Ark. 100, 102, 928 S.W.2d 796, 797 (1996).

---

[28] ECF No. 24-3.
[29] ECF No. 2, at 36-37.
[30] ECF No. 16-5, at 2.

## II. Discussion

The Receiver seeks judgment in its favor, asserting that the Policy covers the amount owing under the Consent Judgment. Gotham also seeks judgment in its favor, asserting that (1) the Consent Judgment is not covered under the Policy's insuring agreement, (2) the Receiver's claim for satisfaction of the Consent Judgment is excluded under several Policy provisions, and (3) the Collection Lawsuit settlement released Gotham from all obligations under the Policy before entry of the Consent Judgment.

Summary judgment is proper if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 371, 322 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 at 322-23. A factual dispute is genuine if the evidence could cause a reasonable jury to enter a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).

Here, the Receiver, who stands in the shoes of the insured, has the burden to make a prima facie case of coverage by showing that the Consent Judgment is covered under the Policy's Insuring Agreement. *Reynolds v. Shelter Mut. Ins. Co.,*

313 Ark. 145, 852 S.W.2d 799 (1993)(citing *Southern Farm Bureau Casualty Ins. Co. v. Reed,* 231 Ark. 759, 332 S.W.2d 615 (1960)).  If the Receiver makes that showing and Gotham relies on an exclusionary provision to deny coverage, Gotham has the burden to show that the Receiver's claim is excluded under the Policy.

### A.  Coverage Under the Insuring Agreement

Arkansas law governs the substantive issues in this case and holds that "an insurance policy, having been drafted by the insurer without consultation with the insured, is to be interpreted and construed liberally in favor of the insured and strictly against the insurer."  *Noland v. Farmers Ins. Co.*, 319 Ark. 449, 892 S.W.2d 271, 272 (1995).  However, "[t]he terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid."  *Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 937 S.W.2d 180, 182 (1997) (quotations and citations omitted).

The Policy's Insuring Agreement provides coverage for "Damages . . . arising out of a negligent act, error, or omission resulting in a claim for financial loss" provided, among other things, that the "negligent act, error, or omission took

place in the rendering of or failure to render Professional Services."[31]  The Policy

defines "Damages" as follows:

> Damages means monetary judgment, award or settlement, except for
> those for which insurance is prohibited by law.  Damages does not
> include punitive or exemplary Damages, fines, penalties, sanctions,
> taxes, awards or Damages that are multiples of any covered fees,
> deposits, commissions or charges for goods or services.  *Damages does
> not include any amounts that represent, or are substantially equivalent
> to, the return, restitution, disgorgement, forfeiture or rescission of any
> personal profit, remuneration or financial advantage, or monies to
> which an insured was not entitled.*[32]

The "Named Insured" is AIBA, and "Covered Persons and Entities" include

"any present or former principal, partner, officer, director, or employee of the

Named Insured . . . , but only as it respects Professional Services rendered on

behalf of the Named Insured."[33]  The Policy Declarations specify "Professional

Services" as "Third Party Administrator of employee benefits, placement,

administration of stop loss."[34]

Gotham argues that the Consent Judgment  is not covered under the Policy

because (1) Lile is not an insured or "Covered Person" with respect to the Consent

Judgment , (2) the Consent Judgment  does not meet the Policy's definition of

"Damages," and (3) coverage is excluded under several provisions.

---

[31]  ECF No. 27-1, at 4.
[32]  ECF No. 27-1, at 10 (emphasis added).
[33]  ECF No. 27-1, at 5-6.
[34]  ECF No. 27-1, at 2.

### i. "Covered Person"

The negligence claim charged that Lile breached legal duties to Cosmo to ensure the company's compliance with terms of the Business Model, ELC treaty, or both, and to refrain from using Cosmo's funds to pay for obligations for which Cosmo was not liable. The Receiver alleged no negligent act apart from Lile's breach of duty to Cosmo, and he sought to hold AIBA vicariously liable for Lile's conduct. Gotham argues Lile did not qualify as a "Covered Person" for the purpose of the negligence claim because his failure to carry out legal duties owed to Cosmo did not amount to rendering "Professional Services" (specified in the Policy as third-party administration of employee benefits and/or placement and administration of stop loss) on behalf of AIBA.

The Receiver counters that the renewed complaint charged that Lile used AIBA to administer the ECHP product "so as to" damage Cosmo,[35] and he points to an allegation in the renewed complaint charging that the ECHP product was not administered according the Business Plan but "in a manner to keep [AIBA] in business at Cosmo's expense."[36] Given the facts alleged in the renewed complaint and the undisputed facts in the summary judgment record, the Court finds that no reasonable factfinder could conclude that Lile's "negligence" was related to the

---

[35] ECF No. 32, at 2.
[36] ECF No. 30, at 4 (quoting ECF No. 27-3, ¶ 9).

performance of "Professional Services" that he rendered on behalf of AIBA. Rather than render "Professional Services" on behalf of AIBA, Lile acted in his self-interest when he ignored the Business Plan and deliberately abused his position as a corporate officer of Cosmo and AIBA. The Court agrees that the undisputed facts show that Lile is not a "Covered Person" under the Policy.

### ii. "Damages"

Gotham next argues that even assuming that Lile qualified as a "Covered Person," the Consent Judgment represents money to which Lile and, by extension, AIBA, were not entitled and therefore does not qualify as "Damages" under the Policy.[37] The Receiver argues that the negligence claim sought legal damages rather than an equitable remedy and that the Consent Judgment meets the Policy's definition of "Damages." The Court disagrees with the Receiver's position.

Each cause of action set forth in the renewed complaint sought $2,371,358.50. The amount sought was not based on an assessment of monetary compensation for an injury such as lost profits or property damage. Instead, as alleged in the renewed complaint, it was the specific amount that Lile took from Cosmo. Despite that the Receiver sought $2,371,358.50 under the label "Alternatively, Negligence" and that AIBA and Lile consented to a $2 million judgment on that claim, the amount sought represented or was the "substantial

---

[37] ECF No. 26, at 12.

equivalent" of the "return of . . . monies to which [the] insured was not entitled." Assuming only for the sake of review that Lile qualified as a "Covered Person" under the Policy, the Court finds that the Consent Judgment does not qualify as "Damages" as defined under the Policy.

## B. Exclusions

While the Court finds that the undisputed record shows that the Receiver's claim is not covered under the Policy's Insuring Agreement, the Court will also address Gotham's claim that the Receiver's claim is precluded under Policy Exclusions A, C, Q, X, and CC, which provide that the Policy does not apply to any claim[38] "based on or arising out of" specified circumstances. Under Arkansas law, unambiguous exclusionary endorsements are given effect, without resort to rules of construction. *Elam v. First Unum Life Ins. Co.,* 346 Ark. 291, 57 S.W.3d 165 (2001). If, however, the language is ambiguous, a court must construe the policy liberally in favor of the insured and strictly against the insurer. *Id.*

### i. Exclusion A

Exclusion A bars coverage for Claims based on or arising out of:

any intentional, willful, criminal, fraudulent, malicious, or dishonest act or admission of an insured; except where the Claim also includes allegations of a negligent act, error or omission in the performance of your Professional Services; however, this Policy will not pay any Damages . . . in the event of an adjudication or admission by an insured

---

[38] The Policy defines "Claim" as "a written demand for money or services received by the insured . . . ." ECF No. 16-1, at 9 (Part III(C)).

the act or omission was intentional, willful, criminal, fraudulent, malicious, or dishonest."[39]

Gotham argues that Exclusion A precludes coverage because the Underlying Lawsuit charges that Lile diverted funds from Cosmo and that Lile pleaded guilty to criminal conduct—specifically, that he converted to his own personal use, assets belonging to Cosmo. The Receiver responds that Lile's guilty plea was limited to his misuse of a credit card, and he argues that Exclusion A is inapplicable because the Consent Judgment is based only on the negligence claim, which he contends "does not include damages from the intentional misuse of the [credit] card."[40] The Court finds these arguments unavailing.

First, the "Alternatively, Negligence" claim did seek recovery of money that Lile took via the misuse of a credit card. With each claim set forth in the renewed complaint, the Receiver sought the total amount that he claimed Lile appropriated from Cosmo by several means, one being the misuse of a credit card. Second, while Exclusion A does not exclude claims that include allegations of a "negligent act . . . in the performance of your Professional Services," the allegations in the renewed complaint and the undisputed record show that Lile misappropriated Cosmo's funds by intentionally disregarding the Business Plan, not by means of a

---

[39] ECF No. 16-3, at 7 (Part II(A)).
[40] ECF No. 30, at 9.

15

negligent act in the performance of "your Professional Services." The Court finds that Exclusion A, in unambiguous terms, excludes coverage in this case.

### ii. Exclusion C

Exclusion C bars coverage for claims based upon or arising out of "any business entity not named in the Declarations or an Endorsement to this Policy for which the Insured does not have Management Control . . . "[41] The Policy defines "Management Control" as having the right or power to select a majority of the board of directors because of majority ownership or pursuant to a contract.[42] Gotham argues that Exclusion C precludes the Receiver's claim because Lile's wrongful acts were committed in his role as the president of Cosmo, Cosmo was not named in the Policy Declarations, and AIBA did not have "Management Control" over Cosmo.

Gotham's argument assumes that the Receiver's claim is based upon or arises out of the conduct of Cosmo's business. However, it is undisputed that Lile ignored the Business Plan that governed the distribution of employer fees to Cosmo, a function assigned to AIBA, and he diverted money according to his own scheme. Given these facts, it is far from clear that the Consent Judgment arose out of the conduct of Cosmo's business and that Exclusion C applies in this case.

---

[41] ECF No. 16-3, at 7 (Part II(C)).
[42] ECF No. 16-3, at 10.

### iii. Exclusion Q

Exclusion Q, in unambiguous language, bars claims based upon or arising out of "the return, restitution, disgorgement, forfeiture or recession of any personal profit, remuneration or financial advantage, or monies to which an insured was not entitled."[43] The Receiver argues that Exclusion Q does not apply because the amount owing under the Consent Judgment represents a legal remedy, not one of the specific equitable remedies listed in Exclusion Q. Gotham argues that it is necessary to look to the real nature of the relief sought in the Underlying Lawsuit, not the label given to the cause of action. For reasons previously explained, the Court finds that the "Alternatively, Negligence" claim, and hence the Receiver's claim for satisfaction of the Consent Judgment, was based on or arose out of a claim for the return of money to which the insured was not entitled.

### iv. Exclusion X

Exclusion X appears in an endorsement section of the Policy listing additional exclusions under the heading Third Party Administrators. Exclusion X states: "This policy does not apply to any Claim or Claim Expenses based upon or arising out of . . . the commingling, conversion, misappropriation or defalcation of

---

[43] ECF No. 16-3, at 9. The Policy's definition of "Damages" contains similar language, but it includes "*any amounts that represent, or are substantially equivalent to*, the return, restitution, disgorgement, forfeiture or rescission of any personal profit, remuneration or financial advantage, or monies to which an insured was not entitled." *Id*. at 10(emphasis added).

funds or other property."[44]  Gotham asserts that the Receiver's claim for satisfaction of the Consent Judgment  is excluded because the basis of the Underlying Lawsuit was Lile's misappropriation and conversion of Cosmo's property.  The Receiver responds that Exclusion X has no application because "the claim on which the Consent Judgment is based is negligence, not commingling, conversion, misappropriation or defalcation of funds or other property."[45]

The Supreme Court of Arkansas interprets the term "arising out of" broadly and requires only a "but-for" causal relation or connection.  *See Hartford Fire Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 574 S.W.2d 265, 267 (Ark.1978).  The allegations set forth in the Underlying Lawsuit clearly demonstrate that Lile's commingling, conversion, misappropriation or defalcation of Cosmo's funds is causally related to the Consent Judgment.  Based on the undisputed facts, the Court finds, as a matter of law, that a causal connection exists between the Lile's misappropriation of Cosmo's funds and the Consent Judgment.

### v. Exclusion CC

Exclusion CC, which appears under the Third Party Administrator endorsement, excludes any claim "based upon or arising out of . . . due to or involving directly or indirectly, the insolvency, receivership, bankruptcy,

---

[44]  ECF No. 16-3, at 21.
[45]  ECF No. 30, at 11.

liquidation or financial inability to pay, of any insurance company or of any self-funded or partially self-funded insurance or benefit plan or trust."[46]  Gotham contends that Exclusion CC excludes the Receiver's claim because the Underlying Lawsuit asserted Cosmo's insolvency as a basis for liability.

The Receiver asserts that Exclusion CC is ambiguous due to the language: "based upon or arising out of . . . due to or involving directly or indirectly . . . . " Language is ambiguous if there is doubt or uncertainty as to its meaning and it is susceptible to more than one reasonable interpretation.  *Harasyn v. St. Paul Guardian Ins. Co.,* 349 Ark. 9, 75 S.W.3d 696 (2002).  Here, although the language of the prefatory phrase is somewhat awkward, the meaning is certain: Exclusion CC is broadly written to encompass claims that are based upon, arising out of, due to or involving directly or indirectly, the insolvency of an insurance company or self-funded benefit plan.

The Receiver next argues that even though the receivership proceedings triggered his claim, the negligence claim in the Underlying Lawsuit did not depend on insolvency.  The plain language of Exclusion CC, however, does not require that a claim "depend" on insolvency.  The allegations set forth in the Underlying Lawsuit, including those asserted in support of the negligence claim, leave no question that the Receiver's claims were "due to or involving directly or

---

[46] FINISH THIS

indirectly" Cosmo's insolvency, which the Receiver alleged was caused by Lile's misappropriation of funds.[47]  The Court finds that Exclusion CC, in unambiguous terms, bars the Receiver's claim.

## C.  Effect of Settlement

Gotham notes, correctly, that § 23-89-101 permits a judgment creditor to step into the shoes of the insured and claim the insured's right to payment of covered claims.  Gotham argues that Cosmo's rights are no greater than those of AIBA, the insured, and that the settlement agreement entered in 2013 by Gotham, Lile, and AIBA in connection with the Collection Lawsuit precludes the Receiver's claim.

The Receiver argues that the subrogation rights of an injured party under § 23-89-101, which are contractual in nature, arise immediately upon the happening of the injury giving rise to his claim, and they cannot be destroyed by a subsequent settlement between the insured and insurer.  The Court agrees.  Once a cause of action accrued to Cosmo based the injury inflicted by Lile's misconduct, Cosmo's subrogation rights were fixed and could not be destroyed via agreement between Gotham, Lile, and AIBA.  Obtaining a judgment and unsuccessful efforts to collect it were conditions precedent to bringing this direct action, but Cosmo's

---

[47] The renewed complaint charges:  "As a result of Lile's conduct, Cosmo became insolvent and unable to pay legitimate claims, which led to the appointment of the Receiver." ECF No. 27-3, at 8, ¶ 20.

rights remained despite the settlement agreement. In addressing a prior version of

§ 23-89-101, the Eighth Circuit observed:

> The rights of the injured party arise, however, immediately upon the happening of the accident. This right, arising from contract, cannot be destroyed by an attempted subsequent cancellation, release, or compromise by the insured and insurer. A contrary rule allowing the insured and insurer to destroy the claim of the injured would render the right of little value.

*Spann v. Commercial Standard Ins. Co. of Dallas, Tex.*, 82 F.2d 593, 599 (8th Cir.

1936)(internal citations omitted).

## III. Conclusion

For the reasons stated, the Court finds that Plaintiff's claim is not covered

under the insurance policy at issue, and Defendant is entitled to judgment in its

favor. Defendant's cross-motion for summary judgment [ECF No. 25] is

GRANTED, and pursuant to the judgment entered together with this order,

Plaintiff's claim is DENIED, and this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 17TH DAY OF OCTOBER, 2019.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE